**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KIMBER Y. BURDETT-PICKERING, | CASE NO. 4:17-cv- 00580-JED-GBC |
| Plaintiff, | |
| v. | (MAGISTRATE JUDGE COHN) |
| NANCY A. BERRYHILL,[1]<br>Deputy Commissioner for Operations,<br>performing the duties and functions not<br>reserved to the Commissioner of Social<br>Security, | REPORT AND RECOMMENDATION TO<br>DENY PLAINTIFF'S APPEAL |
| Defendant. | |

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Kimber Y. Burdett-Pickering ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## I. STANDARD OF REVIEW

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[1] Ms. Berryhill, Deputy Commissioner for Operations, is leading the Social Security Administration, pending the nomination and confirmation of a Commissioner. Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

### A.    Procedural History

Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Act in July 2014, and an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Act in June 2014, alleging disability since January 2013, as amended, due to a back disorder. (Tr. 26, 46, 270-271, 274-279, 298, 303). She was 46 years of age as of June 30, 2013, the date she was last insured for purposes of DIB, and 49 years of age as of August 31, 2016, the date of the Commissioner's final decision, for purposes of SSI. (Tr. 286 (reflecting date of birth)), 270 (reflecting date last insured)). Plaintiff has a 12th grade education plus one year of college (Tr. 304), and past relevant work ("PRW") as a medical clerk, human resources clerk, and a casino cashier supervisor. (Tr. 304). Following an administrative hearing, the ALJ found Plaintiff disabled as of May 9, 2014, but not from her alleged disability date of January 1, 2013. (Tr. 26,

34-35). Plaintiff appealed the finding of non-disability from the time period of January 1, 2013 through May 8, 2014. (Pl. Br. at 1, 7, Doc. 12). The Appeals Council denied review on August 14, 2017, (Tr. 8-13), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. §§ 416.1481; 422.210(a). This action followed.

### III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges four errors: (1) The ALJ's Residual Functional Capacity ("RFC") as to Plaintiff's physical functional limitations prior to May 9, 2014 is unsupported by substantial evidence; (2) the ALJ's step two determination as to Plaintiff's adjustment disorder and anxiety disorders is legally flawed; (3) the ALJ's RFC as to Plaintiff's mental impairments prior to May 9, 2014 is unsupported by substantial evidence; and (4) the ALJ's step four determination for the period prior to May 9, 2014 is unsupported by substantial evidence and is legally flawed. (Pl. Br. at 7).

A.     **RFC and Weight to Medical Evidence**

1.     **Treating Physician Opinion**

Plaintiff contends the ALJ erred in failing to adopt the opinion of Plaintiff's treating physician, Dr. Clymer, for the period as of January 1, 2013 through May 8, 2014. (Pl. Br. at 7-9). In the decision, the ALJ reviewed the record before evaluating the opinion of the treating doctor for the time period prior to May 9, 2014:

> Since the alleged onset date of disability, January 1, 2013, the claimant has had the following severe impairment: status post hemorrhoidectomy for anal fistula; status post hernia repair; obesity; and broad-based disc herniation at L4-L5 with hypertrophic changes posteriorly and mild and focal central canal stenosis.
>
> On September 1, 2011, the claimant underwent colonoscopy and hemorrhoidectomy for anal fistula …
>
> On October 10, 2012, the claimant was seen for a knot in her right armpit for three weeks. On December 12, 2012, she requested a refill of Valium. On January 15, 2013, the claimant complained of pelvic pain. She stated that she was moving heavy

furniture two weeks prior and felt a "rip." CT scan of the abdomen and pelvis showed no evidence for appendicitis. Ultrasound of the urinary bladder performed on January 25, 2013, was indicative of significant post-void residual and possible obstruction. On February 22, 2013, the claimant underwent hernia repair, oophorectomy, and appendectomy. On February 27, 2013, the claimant was seen in follow up and was feeling good with no pain …

The first mention of back pain is October 2, 2013, when the claimant was seen for medication refills and to discuss her back pain and weight gain …

The claimant is obese at 65 inches tall and 214 pounds …

On November 21, 2013, the claimant received medication refills and was referred to a pain management clinic. On November 26, 2013, she was seen for a sore throat. On January 24, 2014, the claimant was seen for physical clearance for weight management. On March 20, 2014, the claimant was see[n] for left jaw pain and swelling for two days. The claimant was seen in the emergency room on March 26, 2014, for back pain.

The claimant was seen by a pain specialist on April 4, 2014. Physical examination showed pain from L-3 to S-1 with limited range of motion in all directions. There was negative straight leg raising and the claimant was able to stand from a seated position with no significant difficulties or limitations. There was normal heel and toe walk. Medication was prescribed. She received an injection on April 24, 2014.

20 C.F.R. 404.1529 and 416.929 states that [the ALJ] will consider the claimant's work record in assessing her claim. A review of the claimant's earnings record shows sporadic earnings in her lifetime and no earnings since 2008. This raises the question as to whether the claimant's continued unemployment is actually due to her medical impairments. [The ALJ] find[s] that the claimant's work record does not lend great support to [her] statements about her inability to work because of pain and other subjective complaints …

After careful consideration of the entire record, [the ALJ] find[s] that prior to May 9, 2014, the date the claimant became disabled, the claimant had the RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday (Light work) … except only occasional stooping and climbing ladders, ropes, or scaffolds.

Based on the foregoing, [the ALJ] find[s] the claimant has the above RFC assessment prior to May 9, 2014, which is supported by the objective evidence. The evidence shows that prior to April 2014, the claimant sought sporadic medical treatment from March 2010 to November 2011 for a variety of ailments, many of which do not meet the duration requirement of the Act. The claimant did not seek treatment again until September 21, 2012. Although she alleges disability from

January 2013, the first mention of back pain is not until October 2, 2013. Physical examination on April 4, 2014, showed pain from L-3 to S-1 with limited range of motion in all directions. There was negative straight leg raising and the claimant was able to stand from a seated position with no significant difficulties or limitations. There was normal heel and toe walk. Thus, there is no objective evidence prior to May 2014 that would limit the claimant to less than light work activity with only occasional stooping and climbing ladders, ropes, or scaffolds …

Two medical experts with the State Agency, Dr. Rodgers and Dr. Metcalf, determined that the claimant could perform light work activity with occasional stooping and climbing ladders, ropes, and scaffolds … I have accorded significant weight to the opinions of the State Agency medical consultants because they are deemed experts and highly knowledgeable in the area of disability and because their opinions are well-supported … and largely consistent with the record as a whole, as set forth above. The evidence prior to May 9, 2014, is persuasive that the claimant could perform light work activity with occasional stooping and climbing ladders, ropes, or scaffolds and that her mental impairments are nonsevere …

MRI of the lumbar spine performed on May 9, 2014, showed broad-based disc herniation at L4-L5 with hypertrophic changes posteriorly and mild and focal central canal stenosis …

[The ALJ] find[s] that beginning on May 9, 2014, the claimant's allegations regarding her symptoms and limitations are consistent with the evidence.

(Tr. 28-29, 31-33). Thus, the ALJ discussed the reasons for not finding Plaintiff disabled prior to May 9, 2014. Plaintiff contends the ALJ erred in rejecting the medical opinion of Plaintiff's treating physician, Dr. Clymer, who completed a medical source statement opining Plaintiff had the same limitations on January 1, 2013 as she did on May 9, 2014. (Pl. Br. at 7). The ALJ made the following observations in deciding not to adopt the retroactive limitations from Dr. Clymer:

On April 7, 2016, Dr. Clymer completed a medical source statement indicating that the claimant could lift up to five pounds occasionally; could carry no weight; could sit for three hours in an eight-hour workday for 10 to 30 minutes at a time; could stand for one hour in an eight-hour workday for 10 to 30 minutes at a time; and could walk for 10 to 30 minutes in an eight-hour workday. Dr. Clymer stated that the claimant was limited in using her hands and feet for repetitive movements; could not bend, squat, crawl, or climb; and could occasionally reach, handle, and finger. Dr. Clymer opined the claimant could never be exposed to unprotected heights, moving machinery, marked changes in temperature and humidity; dust, fumes, and bases, and vibrations; and could drive in emergencies only. Dr. Clymer further opined that the claimant could not perform work on a sustained and continuing basis; could not perform work that required a consistent

pace of production; would have a marked impairment in concentration due to pain; and would be absent more than three times a month due to her impairments or treatment. Dr. Clymer stated that the claimant had extensive lumbar disc disease that caused pain involving all extremities, as well as numbness and the need to constantly change positions. He further stated that the medications the claimant took to control her pain and symptoms impaired her cognition to varying degrees. Dr. Clymer stated that he based his opinion on radiographic evidence showing disc bulges, annular tear, foraminal stenosis, and arthritis, and on physical examination that revealed pain in the back and neuropathy in all extremities. Dr. Clymer also opined that these limitations had existed "on or before" January 1, 2013. The first mention of back pain is on October 2, 2013. The first radiographic evidence of an impairment to the claimant's lumbar spine is on May 9, 2014. The claimant was not seen by a pain specialist until April 2014. There is no evidence that Dr. Clymer saw the claimant prior to December 8, 2015. Physical examination performed on December 8, 2015; and on January 4, 2016; and April 7, 2016, were essentially the same and do not support the extreme limitations given. For these reasons, only some weight is given to Dr. Clymer's opinion.

Based on the foregoing, [the ALJ] find[s] the claimant has the above RFC assessment as of May 9, 2014, which is supported by the objective evidence detailed above.

(Tr. 34). The ALJ found the evidence did not support the limitations in Dr. Clymer's opinion prior to May 9, 2014. Id. The ALJ noted the first radiographic evidence of Plaintiff's lumbar spine was the MRI on May 9, 2014. Id. The ALJ observed Plaintiff's first mention of back pain was on October 2, 2013, and Plaintiff was not seen by a pain specialist until April 2014. Id. The ALJ notes Plaintiff did not present any records from Dr. Clymer prior to December 8, 2015. Id. The ALJ observed physical examinations performed on December 8, 2015; January 4, 2016; and April 7, 2016, were essentially the same and do not support the limitations. Id. For these reasons, the ALJ only gave some weight to Dr. Clymer's opinion. Id.

An ALJ may give greater weight to the opinion of a State agency medical consultant over other opinions when the consultant's opinion is better-supported by the record than the opinion of the treating physician. See 20 C.F.R. § 404.1527(e)(2)(ii) (ALJ should evaluate a state agency medical consultant's opinion using the factors set forth in 20 C.F.R. § 404.1527(a)-(d)), 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole).

7

The ALJ gave significant weight to the opinions of the State Agency doctors, who found Plaintiff could perform light work activity with occasional stooping and climbing ladders, ropes, and scaffolds. (Tr. 33). Thus, the ALJ's RFC was consistent with the opinions of the state agency physicians, and by finding Plaintiff disabled as of the date of her MRI on May 9, 2014, the ALJ made the RFC more favorable to Plaintiff. The ALJ reasonably found Dr. Clymer's opinion for the period January 1, 2013 through May 8, 2014 was not entitled to controlling or great weight. See 20 C.F.R. § 404.1527(c)(3) (opinions receive weight based on their supportability); see also Branum v. Barnhart, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (ALJ may consider the degree to which the physician's opinion is supported by relevant evidence); Vigil v. Colvin, 805 F.3d 1199, 1202 (10th Cir. 2015) ("The ALJ's finding [the physician's] restrictions on standing and walking were inconsistent with his own examination findings is a good reason for giving that medical opinion only moderate weight.").

Therefore, the ALJ reasonably declined to give more weight to this opinion, which the ALJ found inconsistent with the overall record from January 1, 2013 through May 8, 2014. (See 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole); see also Raymond v. Astrue, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence). Moreover, the ALJ could reasonably rely on the opinion of the state agency physicians. See 20 C.F.R. § 416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

### 2. 2007 MRI and Duty to Develop

Plaintiff contends the ALJ should have requested the 2007 MRI as a part of the duty to develop the record. (Pl. Br. at 8). However, Plaintiff does not state how a 2007 MRI will assist in supporting Plaintiff's alleged disability as of January 1, 2013. Id. From the ALJ's review of the record, the ALJ had substantial evidence to make a decision regarding the time period of January 1, 2013 through May 9, 2014, without ordering an MRI from 2007. In the Tenth Circuit, a claimant must first establish some quantum of evidence of a disabling impairment before the ALJ will be required to further develop the record. Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997). The "starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Id. at 1167. The record was sufficient for the ALJ to render a decision regarding Plaintiff's disability claim, and the ALJ was not required to further develop the record.

### 3. State Agency Opinions

Plaintiff states since the ALJ found Plaintiff disabled as of May 9, 2014, the ALJ varied from the State Agency doctors, who found Plaintiff could perform light work. (Pl. Br. at 9-10). The ALJ gave the State Agency physicians significant weight but found the evidence supported disability as of May 9, 2014. (Tr. 33). Thus, the ALJ explained the reasoning for finding Plaintiff disabled on May 9, 2014, despite the State Agency opinions finding Plaintiff could perform light work with limitations. A District Court in Kansas considered a case where the ALJ made the RFC more favorable than the State Agency opinions:

> In this case, Plaintiff claims the ALJ erred in not "adopting" the limitations opined by the state agency medical consultant. But the ALJ noted that the consultant opined that Plaintiff retained the ability to perform a range of light to sedentary activities. In one respect, the ALJ's RFC assessment was more limiting and more favorable to Plaintiff in that he found that Plaintiff could perform the full range of sedentary activities, not light to sedentary activities. The regulations define sedentary work as requiring primarily sitting for approximately six hours of an

eight-hour workday, occasionally lifting ten pounds and being able to occasionally walk or stand for up to two hours of an eight-hour workday. In contrast, light work requires that while sitting, the person be able to do some pushing and pulling of arms and legs, and be able to walk and/or stand for up to six hours of an eight-hour workday, as well as being able to occasionally lift 20 pounds and frequently lift ten pounds. In complaining that the ALJ's RFC assessment did not adopt more adverse RFC opinion of the state agency medical consultant, Plaintiff fails to show that any such error by the ALJ harmed or prejudiced Plaintiff.

New v. Astrue, 2012 WL 1108556, at *8 (D. Kan. Apr. 2, 2012). Moreover, the Western District of Oklahoma also found the ALJ did not err when finding the RFC more favorable to the plaintiff:

As such, the ALJ found that his RFC determination for sedentary work with a sit/stand option was consistent with the medical evidence, but more favorable to Plaintiff than the medical opinions of the state agency consultants, which found Plaintiff capable of light work and standing up to 4 hours a day. Plaintiff has not shown that the ALJ's statement was erroneous in substance or that the ALJ erred in referencing less restrictive medical opinions that he rejected. Cf. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (holding ALJ does not commit reversible error when evidence adverse to claimant is tempered in claimant's favor).

Meeks v. Comm'r of Soc. Sec., No. CIV-18-0134-R, 2018 WL 4624862, at *6 (W.D. Okla. Sept. 4, 2018), report and recommendation adopted, No. CIV-18-0134-R, 2018 WL 4624815 (W.D. Okla. Sept. 26, 2018). Similarly, in this case, the ALJ considered the evidence in the record and found Plaintiff disabled as of the date of her lumbar spine MRI. (Tr. 33). Thus, the ALJ's RFC was consistent with the opinions of the state agency physicians for the time period prior to May 9, 2014, and by finding Plaintiff disabled as of May 9, 2014, the ALJ made the RFC more favorable to Plaintiff. See Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

**B.     Plaintiff's Adjustment and Anxiety Disorders**

Plaintiff states the ALJ erred in the analysis of Plaintiff's adjustment and anxiety disorders. (Pl. Br. at 10-11). The ALJ made the following observations regarding Plaintiff's adjustment and anxiety disorders:

> The claimant has been treated for depression and anxiety by her treating physician with medication only. There is no evidence that the claimant has ever sought or received treatment from a mental health professional. She underwent [a] consultative psychological examination on September 24, 2014. Mental status examination showed thoughts were organized, logical, and goal-directed and the claimant was able to stay focused on the exam. Thought content was appropriate and no unusual thought content was reported. Diagnosis was consistent with a pain disorder due to general medical condition and an adjustment disorder. Dr. LaGrand stated that the claimant's disability appeared to be based primarily on physical factors, which were beyond the scope of her evaluation, and cognitively the claimant appeared capable of task of moderate complexity in a work setting. [The ALJ] give[s] great weight to Dr. LaGrand's opinion because she conducted [the exam] in interview with the claimant, performed a detailed mental status examination, and because her opinion is consistent with the evidence as a whole.

> Based on the totality of the evidence, [the ALJ] find[s] that the claimant's impairment of an adjustment disorder and anxiety represent no more than a slight abnormality and would have only a minimal effect on the claimant's ability to perform work-related activities and thus, are nonsevere …

> On November 28, 2011, the claimant had been out of depression medication for a week and stated that she "forgets" to take it.

> The claimant did not seek treatment again until September 21, 2012. She requested a refill of Paxil and Valium because her mother was in hospice care …

> [The ALJ] ha[s] considered all the impairments, including the above-discussed nonsevere impairments in determining the claimant's RFC. The ALJ concludes that the claimant's nonsevere impairments of an adjustment disorder and anxiety do not impose any additional limitations not already contained within the above RFC …

> Two psychological medical experts with the State Agency, Dr. Goodrich and Dr. Mohney, determined that the claimant did not have a severe mental impairment.

(Tr. 29, 31-33). Thus, the ALJ considered Plaintiff's adjustment and anxiety disorders in the decision. Plaintiff contends the ALJ did not follow the correct legal standards in finding Plaintiff's adjustment and anxiety disorders to be "nonsevere" impairments and giving great weight to the opinion of Dr. LaGrand. (Pl. Br. at 10-11). Plaintiff states the ALJ did not apply the psychiatric review technique and make findings in each functional area (activities of daily living; maintaining social functioning; maintaining concentration, persistence, and pace; and episodes of

decompensation). Id. In finding no severe mental impairments, the ALJ noted Plaintiff had only taken medication for her mental disorders and had sought no specific mental health treatment. (Tr. 29). Plaintiff reported not seeking professional mental health treatment either before or after her May 9, 2014 disability onset date. (Tr. 451, 456). See 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v) (2017) (Commissioner considers type of treatment when considering claimant's symptoms); Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988) (extensiveness of attempts to obtain relief). Plaintiff denied depressive symptoms to Dr. Clymer after her disability onset date. (Tr. 512 (December 2015); 519 (January 2016)).  The ALJ noted, findings of organized, logical, goal-directed thoughts and the ability to focus, by Denise LaGrand, Psy.D., a consultative licensed clinical psychologist, in September 2014. (Tr. 455 (cited as Exhibit 5F)).

Plaintiff asserts the ALJ erred in failing to assess her mental disorders pursuant to 20 C.F.R. §§ 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form ("PRTF"), and this error required remand. (Pl. Br. at 10-11). However, the Tenth Circuit has found this error harmless, which did not require remand. See Rose v. Colvin, 634 App'x 632, 636 (10th Cir. 2015) (unpublished)[2] (finding harmless error where ALJ did not document PRTF but included mental limitations in RFC consistent with multiple consultative and reviewing state agency psychologists); Thompson v. Colvin, 551 App'x 944, 947-48 (10th Cir. 2014) (finding harmless error where ALJ did not document PRTF but included mental limitations in RFC later, establishing mental impairments not disabling). Here, as in Rose, the ALJ's finding Plaintiff did not have a "severe" mental impairment was consistent with Dr. LaGrand's conclusion Plaintiff's mental symptoms did not appear to significantly affect her performance and her disability claim appeared

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential but may be cited for their persuasive value."

based primarily on physical factors. (Tr. 457). The ALJ's finding was also consistent with the opinions of Carolyn Goodrich, Ph.D., and Carol Mohney, Ph.D., state agency psychologists, who found Plaintiff's mental impairments were not "severe." (Tr. 110, 121, 136-137, 147-148). The ALJ afforded significant weight to the opinions of Drs. Goodrich and Mohney (Tr. 33), both of whom completed PRTFs indicating Plaintiff had only mild limitations for purposes of steps two and three.

If a court can follow the adjudicator's reasoning in conducting its review, and can determine that correct legal standards were applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. See Thompson, 551 App'x at 947 (citing Keyes-Zachary, 695 F.3d at 1166). The opinions of Drs. LaGrand, Goodrich, and Mohney were supported by the favorable findings and lack of significant mental health treatment the ALJ noted, as discussed above. These opinions were also supported by Plaintiff's own reports she did not require special reminders to take care of personal needs and grooming, to take medicine, or to go places (Tr. 316, 318); she could go out alone (Tr. 317-318), and manage personal finances (Tr. 317); and her condition did not affect her abilities to complete tasks, to understand, to follow instructions, or to get along with others. (Tr. 319-320). See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2017) (Commissioner considers inconsistencies in assessing symptoms). While in this case the ALJ did not include mental limitations in Plaintiff's RFC, as was the case in Rose and Thompson, the ALJ assessed Plaintiff's RFC consistent with the evidence as to her mental functioning and found Plaintiff disabled as of May 9, 2014. See Sanders, 556 U.S. at 408-09. Thus, the ALJ reasonably concluded Plaintiff's mental impairments were not "severe" and did not warrant specific mental limitations in the RFC.

C.      **RFC and Plaintiff's Mental Impairments**

Plaintiff contends although the State Agency doctors found Plaintiff to have mild difficulties in activities of daily living; maintaining social functioning; and concentration, persistence, or pace; the ALJ did not include these limitations in the RFC or limit Plaintiff's ability to interact with the general public. (Pl. Br. at 11-12). The ALJ's findings and analysis were sufficient to show she reasonably considered the combined effects of Plaintiff's impairments, and found Plaintiff's mental impairments did not warrant specific mental limitations. The ALJ stated several times she reviewed and considered the entire record (Tr. 27-28, 33), and specifically acknowledged she considered the combined effects of Plaintiff's impairments, including those she found not "severe." (Tr. 27, 29, 32). The ALJ found Plaintiff could perform a range of light work without specific mental limitations from January 1, 2013 through May 8, 2014. (Tr. 29). As discussed above, the ALJ noted favorable objective medical evidence of Plaintiff's mental functioning and the absence of significant mental health treatment during the period at issue. Plaintiff contends the ALJ erred in not accounting for the mild limitations Drs. Goodrich and Mohney found in their PRTF assessments in the RFC. (Pl. Br. at 11-12). However, the Tenth Circuit has held an ALJ's finding of a higher moderate limitation at steps two and three did not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment, and the ALJ was under no obligation to include limitations in a claimant's RFC based solely on his finding of such as part of the distinct step-three analysis. See Beasley v. Colvin, 520 Fed. App'x. 748, 754 (10th Cir. 2013). A District Court in the Western District of Oklahoma recently considered a case where the ALJ found no severe mental impairment:

> In sum, the ALJ considered plaintiff's nonsevere mental impairment—
> which included her anxiety—at step four and concluded plaintiff had no functional
> limitations resulting from it. The ALJ was not required to impose any limitations
> in the RFC unless the record bore out those limitations. Plaintiff cites no evidence

indicating her anxiety causes any functional limitations, and based upon the medical evidence in the record, the court can find none. Accordingly, her argument that she cannot do unskilled work fails for these reasons as well. SSR 96-8p, 1996 WL 374184, at *1 (when there is no allegation of a specific functional limitation, and no information in the record regarding any such limitation, "the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity"); see Miller v. Astrue, 496 Fed. Appx. 853, 859-60 (10th Cir. 2012) (affirming notwithstanding ALJ's failure to discuss severe mental impairment as part of his RFC determination, where "claimant was not markedly impaired in any functional areas" for purposes of Paragraph B criteria, and claimant failed to provide any additional record evidence of mental functional limitations resulting from personality disorder); Grede v. Astrue, 443 Fed. Appx. 323, 325-26 (10th Cir. 2011) (affirming where the ALJ found mental impairment non-severe, made no further findings concerning a mental impairment at step four, but stated he had considered all of claimant's symptoms and the medical evidence); Barrett v. Astrue, 340 Fed. Appx. 481, 485 (10th Cir. 2009) (finding no reversible error where ALJ concluded mental impairments were non-severe and therefore included no mental limitation in RFC, but also "indicated that he had ... considered the entire record and all of [the] claimant's symptoms to the extent ... they were reasonably consistent with the evidence, including the objective medical evidence"); see also McAnally v. Astrue, 241 Fed. Appx. 515, 518 (10th Cir. 2007) (when Plaintiff did not "identify any additional" limitations that should have been included or discuss any evidence that would support the inclusion of additional limitations, the RFC stands).

Sadongei v. Colvin, 2017 WL 74283, at *4 (W.D. Okla. Jan. 6, 2017). Similarly, in this case, Plaintiff does not point to any evidence indicating her mental impairments cause any work-related functional limitations. Although the state physicians, Drs. Goodrich and Mohney, noted mild limitations in their PRTF assessments, they assessed Plaintiff's mental impairments as non-severe. (Tr. 110, 121, 136-137, 147-148). Moreover, the ALJ did not deny Plaintiff's claim at step two, but proceeded with the sequential evaluation, stating that she had considered the entire record and all of Plaintiff's impairments in assessing her RFC. (Tr. 32). The ALJ concluded Plaintiff's nonsevere impairments of adjustment disorder and anxiety disorder did not impose any additional limitations not already contained within the RFC. Id. Therefore, the ALJ reasonably did not incorporate any social functioning limitations into the RFC assessment. See 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical evidence");

Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) (ALJ was not required to include in his RFC assessment limitations that were not supported by the medical record). Thus, the ALJ had substantial evidence to conclude Plaintiff did not require mental limitations within the RFC.

**D.      Step Four and Vocational Expert ("VE") Testimony**

**1.       Performance of Past Relevant Work**

Plaintiff contends the ALJ erred at Step Four of the sequential evaluation process by finding Plaintiff could perform her past relevant work ("PRW") of casino cashier supervisor and human resources clerk, both with a Specific Vocational Preparation ("SVP") of 7 because she did not perform the work long enough to learn how to do the work or perform it at a substantial gainful activity level. (Pl. Br. at 12-13) (Tr. 75). Work experience applies when it was done within the last 15 years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity. See 20 C.F.R. §§ 404.1565(a), 416.965(a) (2007). However, SVP is the training time required by the typical worker; and may be acquired by a school, work, military, institutional, or vocational environment; and includes training in circumstances such as essential experience in other jobs. See DOT[3] App. C, § III (4th Ed. Rev. 1991). Thus, while the DOT describes a job with an SVP of 7 as typically requiring over 2 years and up to and including 4 years, full performance of such work does not necessarily require holding a specific position for that period of time. Here, there is no indication Plaintiff did not do the jobs at issue long enough to learn them and to perform them successfully. She held the human resources clerk job for three years. (Pl. Br. at 12). She performed the casino cashier job from late 2005 to March 2007 and progressed from managing a casino "cage" to supervising "the main bank, the vault, the cage, and the Players Club." (See Pl. Br. at 12); (Tr. 73-74).

---

[3] U.S. Department of Labor's Dictionary of Occupational Titles ("DOT").

2.      **_Winfrey_ Test**

Plaintiff contends the ALJ erred in finding Plaintiff could perform the third job of medical

clerk. (Pl. Br. at 13-14). Plaintiff contends the ALJ erred by failing to conduct the three-part

Winfrey test when evaluating whether Plaintiff could perform her past relevant work. Id. Plaintiff

cites SSR 82-62 and the "three-phase" analysis set forth in Winfrey:

> In finding that an individual has the capacity to perform a past relevant job,
> the determination or decision must contain among the findings the following
> specific findings of fact:
>     1. A finding of fact as to the individual's RFC.
>     2. A finding of fact as to the physical and mental demands of the past
> job/occupation.
>     3. A finding of fact that the individual's RFC would permit a return to his
> or her past job or occupation.

Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen., SSR 82-62

(S.S.A. 1982). The Tenth Circuit summarized as follows:

> Step four of the sequential analysis … is comprised of three phases. In the first
> phase, the ALJ must evaluate a claimant's physical and mental RFC … in the
> second phase, he must determine the physical and mental demands of the claimant's
> past relevant work … In the final phase, the ALJ determines whether the claimant
> has the ability to meet the job demands found in phase two despite the mental and
> / or physical limitations found in phase one … At each of these phases, the ALJ
> must make specific findings.

Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996). At phase one, the ALJ found Plaintiff's RFC,

listed supra. Plaintiff argues the ALJ found she could perform her past relevant work as a medical

clerk but did not conduct the phase two evaluation regarding the mental and physical demands of

the job. (Pl. Br. at 13). The ALJ asked the VE at both hearings a hypothetical question from the

RFC set forth above, and the VE testified such an individual could perform her past relevant work

as a medical clerk:

[Hearing held on August 3, 2016]:

ALJ:        And are you familiar with Social Security's definition of unskilled, semiskilled, skilled, sedentary, light, medium, heavy, and very heavy work?

VE:         Yes, Your Honor.

ALJ:        Do you understand that if you give an opinion which is not identified specifically with the information in the reference materials you have consulted, that you will advise me of the difference and basis of your opinion?

VE:         Yes, Your Honor.

ALJ:        Is your testimony today going to be based on the national economy?

VE:         Yes, Your Honor.

…

ALJ:        … Tell me what exhibits you reviewed.

VE:         … the disability report … And according to testimony, she's been a medical clerk. This is a semi-skilled level, it's an SVP 4. It's generally listed at sedentary exertion, however in her descriptors and going back to files, it sounds as if her exertion level was light as performed. And the DOT code is 205.362-018 …

ALJ:        … I'm going to give you a hypothetical … I want you to assume someone 48, 47 years of age as of the amended onset date. Same education, same past work as the claimant. Assume they're able to perform a full range of light exertional work-related activities with only occasional climbing of ladders, ropes, and scaffolds, and only occasional stooping. Any mental impairments would be classified as non-severe, not interfering with the ability to perform

work-related activities. For the record, light is defined as lift or carry 20 pounds occasionally, sit, stand, or walk six of eight [hours], all with normal breaks. Push / pull being limited to 20 pounds occasionally, ten pounds frequently. Could this hypothetical person return to the past work of the claimant?

VE:        Yes, Your Honor.

ALJ:       All jobs?

VE:        Yes, Your Honor …

[Hearing held on April 6, 2016]:

ALJ:       You understand, if you give an opinion which conflicts with the information in the DOT or is not addressed in the DOT that you will advise me of the difference?

VE:        Yes, I will …

ALJ:       … I'm going to give you a hypothetical … Assume they were able to perform a full range of light exertional work-related activities. They do have some limitations in that they could only occasionally climb ladders, ropes, or scaffolds and only occasionally stoop. They can frequently climb ramps or stairs. They have unlimited balancing, unlimited kneeling, unlimited crouching, and unlimited crawling. They can also lift or carry 20 pounds occasionally, 10 pounds frequently; sit, stand, or walk six of eight [hours] with normal breaks, and push / pull is limited to 20 pounds occasionally, 10 pounds frequently. Any mental limitations are not severe enough that they would interfere with the ability to perform work-related activities. Based on that, could this hypothetical person return to any of the past work of the claimant?

VE:      … Yes, Your Honor …

(Tr. 42, 72, 74-76, 81, 100, 102-03). The ALJ adopted this testimony in the decision and made the

following findings in the decision:

> The VE at both hearings testified that the claimant's past work as a patient
> account representative (medical clerk), human resources clerk, and cashier
> supervisor were semi-skilled and skilled, and classified as sedentary to light
> exertion. The VEs further testified that the job duties as a patient account
> representative (medical clerk), human resources clerk, and cashier supervisor could
> be performed within the above stated RFC, on a function-by-function bases, both
> as the claimant performed them and as normally performed in the national
> economy. The [ALJ] concurs with the testimony of both VEs and finds the claimant
> is able to perform past relevant work as actually and generally performed. Pursuant
> to SSR 00-4p, [the ALJ] ha[s] determined that the VE's testimony is consistent with
> the information contained in the DOT.

(Tr. 34-35). Thus, the ALJ explained his decision and findings with regard to Plaintiff's past

relevant work, in accordance with Winfrey. In Doyal, the Tenth Circuit upheld the ALJ's decision,

despite the plaintiff's objection on the basis of Winfrey:

> Phase three required the ALJ to reach a conclusion concerning whether [the
> claimant] could satisfy the demands of her past relevant work, based on his findings
> in phases one and two. The ALJ concluded that she could:

> The impartial vocational expert offered testimony indicating that given her
> particular residual functional capacity, the claimant can perform past relevant work.
> The vocational expert added that there is no variance between the description of
> these jobs found in the Dictionary of Occupational Titles and the claimant's
> residual functional capacity (S.S.R.00–4p). Because [the claimant's] past relevant
> work did not require the performance of work activities precluded by her medically
> determinable impairments, I conclude that she is able to perform her past relevant
> work as a housecleaner and sewing machine operator.

> Id.

> [The claimant] complains that the ALJ simply relied on the opinion of the
> vocational expert (VE) as to the demands of her past relevant work, without making
> the proper findings required by the remaining phases of the analysis. It is improper
> for an ALJ to make RFC findings and then to delegate the remaining phases of the
> step four analysis to the vocational expert, because in such cases, "the remainder of
> the step four assessment takes place in the VE's head" and "we are left with nothing
> to review." Winfrey, 92 F.3d at 1025. That is not what occurred here, however. The
> ALJ did not delegate the analysis to the vocational expert; instead, he quoted the

> VE's testimony approvingly, in support of his own findings at phases two and three of the analysis. There was nothing improper about this. An "ALJ may rely on information supplied by the VE at step four." Id.
>
> … The ALJ's findings were adequate here to satisfy the step four requirements articulated in Winfrey.

Doyal v. Barnhart, 331 F.3d 758, 760-61 (10th Cir. 2003). Similarly, in this case, two VEs testified regarding Plaintiff's past relevant work as a medical clerk. The first VE identified this work as a patient account representative, DOT § 219.362-010, defined as light work. (Tr. 102). The second VE identified this work as a medical clerk, DOT § 205.362-018, defined as sedentary work. (Tr. 75). However, with respect to exertion, if someone can do light work, the individual can also do sedentary work, unless there are additional limiting factors. See 20 C.F.R. §§ 404.1567(b), 416.967(b) (2017). Moreover, in the decision, following a discussion as to Plaintiff's limitations, the ALJ concluded nothing in the RFC precluded Plaintiff from performing her past work from January 1, 2013 through May 8, 2014. Id. The ALJ's findings in this case mirror the ALJ's findings in Doyal, and thus, substantial evidence supports the ALJ's decision Plaintiff could perform her past relevant work. See Vititoe v. Colvin, 549 F. App'x 723, 729-30 (10th Cir. 2013) (citing Sanders, 556 U.S. at 409-10. "Our review of the record indicates that the ALJ's question adequately included the limitations that she found were supported by the medical record. That record, along with the VE's testimony on existing jobs, provided substantial evidence to support the ALJ's step-five determination." Talamantes v. Astrue, 370 F. App'x 955, 959 (10th Cir. 2010).

Thus, any arguable deficiency would be harmless, and would not have changed the outcome. See Raymond, 621 F.3d at 1274 (even assuming two of three jobs relied on by the ALJ were erroneous, the court affirmed the ALJ's decision where substantial evidence showed the claimant could do the third job, and the job existed in significant numbers in the national economy).

Therefore, the record provided substantial evidence to support the ALJ's decision. It is not the reviewing court's position to reweigh the evidence or substitute judgment. As the Tenth Circuit has explained:

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion Plaintiff could perform a significant number of jobs in the national economy.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than January 16, 2019.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on January 2, 2019.

**Gerald B. Cohn**
**United States Magistrate Judge**