**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KIMBER Y. B.-P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-CV-580-JED-GBC |
| ) | |
| ANDREW SAUL,[1] Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The Court has for its consideration the Report and Recommendation (R&R) (Doc. 18) of United States Magistrate Judge Gerald B. Cohn, who reviewed the decision of the Commissioner of the Social Security Administration in the case of Plaintiff Kimber B.-P. The plaintiff alleges that she has been disabled since January 2013, primarily due to a back disorder but also due to mental health impairments. Following an administrative hearing, an administrative law judge (ALJ) found that the plaintiff was indeed disabled but only since May 9, 2014. Prior to that date, the ALJ found, the plaintiff retained the residual functional capacity to perform past relevant work. Judge Cohn recommends the Court affirm the ALJ's finding of non-disability from the period of January 1, 2013 through May 8, 2014.

**I.   STANDARD OF REVIEW**

In reviewing a magistrate judge's decision, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the

---

[1] Effective June 17, 2019, Andrew M. Saul became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted as the defendant in this action.

matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "It is 'more than a scintilla, but less than a preponderance.'" *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Martinez v. Barnhart,* 444 F.3d 1201, 1204 (10th Cir. 2006) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

## II. DISCUSSION

In her Objection (Doc. 19), the plaintiff argues (1) that the ALJ's "residual functional capacity" (RFC) finding as to the plaintiff's physical limitations was unsupported by substantial evidence ; (2) that the ALJ's analysis of the plaintiff's mental impairments was legally flawed; (3) that the ALJ's RFC finding as to the plaintiff's mental impairments was unsupported by substantial evidence; and (4) that the ALJ's finding that the plaintiff was capable of performing past relevant work prior to May 9, 2014 was legally flawed and not supported by substantial evidence. The Court has conducted a de novo review and fully considered the issues raised. For the reasons set out below, the Court adopts Judge Cohn's Report and Recommendation.

### A. RFC-Physical Limitations

In reaching her decision, the ALJ found that, prior to May 9, 2014, the plaintiff had the residual functional capacity "to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday" with "only occasional stooping and climbing ladders, ropes, or scaffolds." (Doc. 10 at 37). With

the exception of the limitations on stooping and climbing, the ALJ's RFC finding tracked closely with the Social Security Administration's definition of "light work." *See* 20 C.F.R. §§ 404.1567(b), 416.967.

The plaintiff contends that the ALJ's finding lacked substantial evidence for three reasons. (*See* Doc. 19 at 1–3). First, the plaintiff argues that the ALJ improperly rejected the conclusion of the plaintiff's treating physician, Dr. Clymer, who opined that the plaintiff had severe physical limitations beginning "on or before" January 1, 2013. Generally, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, the ALJ pointed to a variety of reasons why she did not give Dr. Clymer's opinion great weight for the contested period. (*See* Doc. 10 at 38). First and foremost, the ALJ noted that there is no objective evidence in the record to support Dr. Clymer's conclusion that the plaintiff's impairments existed "on or before" January 1, 2013. His conclusion does not appear to be based on any contemporaneous examination of the plaintiff or of any radiographic imaging dating from that period. There is no record of the plaintiff seeing Dr. Clymer until December 2015, and the earliest radiographic evidence of an impairment to the lumbar spine is a May 9, 2014 MRI. The plaintiff counters that a February 2013 x-ray showed "spine spondylosis," but that condition was diagnosed as "mild," and the record makes no mention of any lumbar malady, which was an integral component of Dr. Clymer's diagnosis. (*Compare* Doc. 10 at 496 *with* Doc. 10 at 563). Moreover, the record evidence suggests that, even if the plaintiff's back condition existed as of January 1, 2013, it was not severe. The plaintiff's first mention of back pain does not appear in her medical records until October 2, 2013, and the plaintiff was not seen by a pain specialist for the issue until April 2014. Under these circumstances, it was

reasonable for the ALJ to give limited weight to Dr. Clymer's opinion regarding the plaintiff's physical limitations prior to May 9, 2014.

Second, the plaintiff argues that the ALJ failed to fully develop the record by obtaining and considering the results of a prior, 2007 MRI. Had she done so, the plaintiff contends, there would have been additional evidence in the record to support the proposition that the plaintiff's back problems were the result of a degenerative condition that began long before May 2014. (*See* Doc. 19 at 3). As Judge Cohn points out, however, it is unclear how a 2007 MRI would have bolstered the plaintiff's claim that she became disabled six years later. (Doc. 18 at 9). This is particularly true given the absence of any treatment for back pain in the intervening time. An ALJ's duty to develop the record does not arise until the claimant has come forward with some objective evidence in the record that could have a material impact on the disability decision. *Hawkins v. Chater*, 113 F.3d 1162, 1166–67 (10th Cir. 1997). The record was sufficient for the ALJ to render a decision.

Finally, the plaintiff takes issue with the ALJ's reliance on the opinion of two State Agency doctors who opined that the plaintiff remained capable of light work. (*See* Doc. 12 at 9–10). Although the ALJ stated that she gave "significant weight" to their opinions, the ALJ ultimately sided with Dr. Clymer for the period beginning May 9, 2014. The plaintiff's argument seems to be that, if the ALJ credited Dr. Clymer's opinion over the State Agency doctors for the period after May 9, 2014, then she should have done so for the period in dispute as well. This line of attack is not convincing. The ALJ clearly explained that she credited Dr. Clymer's conclusion for the period beginning May 9, 2014 because that was the date his opinion had objective evidentiary support in the record.

Having conducted a de novo review of the law and the record, the Court concludes that Judge Cohn correctly found that substantial evidence supported the ALJ's findings regarding plaintiff's physical limitations and Residual Functional Capacity.

### B.     Assessment of the Plaintiff's Adjustment and Anxiety Disorders

The plaintiff argues that the ALJ failed to apply the requisite analytical framework when determining that the plaintiff's mental impairments were not severe. (*See* Doc. 19 at 3–4). "When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § [416.920a] and the Listing of Impairments and document the procedure accordingly." *Thompson v. Colvin*, 551 F. App'x 944, 946 (10th Cir. 2014) (alteration in original) (quoting *Carpenter v. Astrue,* 537 F.3d 1264, 1268 (10th Cir. 2008)).[2] This "Psychiatric Review Technique" (PRT) entails a three step process. First, the ALJ must evaluate the claimant's symptoms, signs, and laboratory findings to determine whether the claimant has a "medically determinable mental impairment." *See* 20 C.F.R. §§ 416.920a(b), 404.1520a(b).  Second, the ALJ must evaluate the degree of functional limitation in four broad areas of ability: Understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. §§ 416.920a(c), 404.1520a(c). Finally, the ALJ must use this information to determine the severity of the claimant's mental impairments. §§ 416.920a(d), 404.1520a(d). Previously, an ALJ was required to summarize the necessary findings using a standard Psychiatric Review Technique Form. *See Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995). Under the current rule, the ALJ is only required to "document application of the technique

---

2     A parallel regulation in Title II of the Social Security Act, which governs disability insurance, mirrors the technique called for in § 416.920a. *See* 20 C.F.R. § 404.1520a.

in the decision." 20 C.F.R. §§ 404.1520a(e), 416.920a(e); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008).

In reaching her conclusion that the plaintiff's mental impairments were not severe, the ALJ stated as follows:

> The claimant has been treated for depression and anxiety by her treating physician with medication only (Exhibit 2F). There is no evidence that the claimant has ever sought or received treatment from a mental health professional. She underwent consultative psychological examination on September 24, 2014. Mental status examination showed thoughts were organized, logical, and goal-directed and the claimant was able to stay focused on the exam. Thought content was appropriate and no unusual thought content was reported. Diagnosis was consistent with a pain disorder due to general medical condition and an adjustment disorder. Dr. LaGrand stated that the claimant's disability appeared to be based primarily on physical factors, which were beyond the scope of her evaluation, and cognitively the claimant appeared capable of task of moderate complexity in a work setting (Exhibit 5F). I give great weight to Dr. LaGrand's opinion because she conducted in [sic] interview with the claimant, performed a detailed mental status examination, and because her opinion is consistent with the evidence as a whole.
>
> Based on the totality of the evidence, I find that the claimant's impairment of an adjustment disorder and anxiety represent no more than a slight abnormality and would have only a minimal effect on the claimant's ability to perform work-related activities and thus, are nonsevere.

(Doc. 10 at 33). Thus, it appears that the ALJ did not make specific findings regarding the plaintiff's limitations in the "four broad areas" called for under the rules. *See* 20 C.F.R. §§ 416.920a(c), 404.1520a(c).

Judge Cohn held this to be harmless error, citing overwhelming evidence in the record supporting the ALJ's ultimate conclusion that the plaintiff's mental impairments were not severe. (*See* Doc. 18 at 11–13). Although the plaintiff was occasionally prescribed medication for anxiety and depression, she twice reported that she was not seeking mental health treatment. (Doc. 10 at 455, 460). On two occasions, first in December 2015 and again in January 2016, she told Dr. Clymer that she was not suffering symptoms of depression. (Doc. 10 at 516, 523). Dr. LaGrand stated that, although the plaintiff reported "some mental/emotional symptoms, they do not appear

6

to significantly affect her performance." (Doc. 10 at 461). As the plaintiff points to no case showing that failure to properly apply and document the PRT requires remand even when there is no evidence to suggest severe impairment, the Court finds Judge Cohn's reasoning persuasive.

### C. RFC-Mental Impairments

Next, the plaintiff argues that the ALJ erred by failing to take the plaintiff's mental impairments into account when determining her RFC prior to May 9, 2014. (*See* Doc. 19 at 4–5). The plaintiff points to the opinions of two State Agency doctors who found the plaintiff's mental impairments to cause "mild difficulties" in the following areas: activities of daily living; maintaining social functioning; and concentration, persistence, or pace. (Doc. 10 at 125, 140). Because the ALJ's RFC finding for the period before May 9, 2014 made no mention of the limitations found by the State Agency doctors, the plaintiff contends that the finding was not supported by substantial evidence.

The Court agrees with Judge Cohn's conclusion that the ALJ's findings and analysis were sufficient to show that the ALJ reasonably considered the combined effects of the plaintiff's impairments. (Doc. 18 at 14). At step two of the five-step process, the ALJ found that the plaintiff's impairments of an adjustment disorder and anxiety "represent[ed] no more than a slight abnormality and would have only a minimal effect on the claimant's ability to perform work-related activities." (Doc. 10 at 33). This was supported by the fact that the plaintiff did not seek professional mental health treatment and, at various times, denied suffering from mental health problems. Then, at step four, the ALJ specifically stated that she had considered the plaintiff's non-severe mental impairments but concluded they did not warrant inclusion of any limitations in her RFC. (Doc. 10 at 36). Thus, the ALJ's decision not to include any limitations in the RFC due to mental health issues was entirely consistent with the record and her prior determination that the plaintiff's mental impairments were not severe.

7

### D.     Step Four and Vocational Expert Testimony

Finally, the plaintiff takes issue with the ALJ's finding that the plaintiff was, during the disputed period, capable of performing "past relevant work" (PRW). (*See* Doc. 19 at 5). The plaintiff testified that she had three jobs within the last 15 years. (*See* Doc. 10 at 105–06). First, she had a seven-month stint doing "back office" work for a medical imaging company. Then, from 2000 to 2003, she worked in the corporate offices of Greyhound Bus Lines doing employment compliance work. Finally, from late 2005 to March 2007, she worked as a supervisor at a casino.

Citing the opinion of the two vocational experts who testified at the plaintiff's hearings, the ALJ found that the plaintiff had PRW as "a patient account representative (medical clerk), human resources clerk, and cashier supervisor" and that the plaintiff retained the RFC to perform these jobs until May 9, 2014. (*See* Doc. 10 at 38–39).[3] As a result, the ALJ concluded, the plaintiff was not disabled during the disputed period.

The plaintiff argues that the ALJ's determination was flawed because (1) the plaintiff did not hold two of the cited jobs long enough for them to qualify as PRW, and (2) the ALJ failed to conduct a legally required inquiry into whether the plaintiff could actually perform the remaining job. (*See* Doc. 12 at 12–14; Doc. 19 at 5–6).

---

3     The ALJ stated that the two vocational experts agreed regarding which job titles applied to the plaintiff's former positions, but their testimony actually conflicted. At the initial hearing, a VE testified that the plaintiff's job with the medical provider met the DOT definition for "patient account representative" (DOT 219.362-010) and that her job with the bus line met the definition of a "human resources clerk" (DOT 209.362-026). (Doc. 10 at 106). Then, at a follow-up hearing, another VE described the positions as "medical clerk" (DOT 205.362-018) and "human resources advisor" (DOT 209.362-026). (Doc. 10 at 79). It is unclear why the ALJ chose to blend the titles of "patient account representative" and "medical clerk," or why she selected "human resources clerk" over "human resources advisor." Whatever the ALJ's reasoning, the question of which job title applied is ultimately academic. The VEs testified that the plaintiff retained the RFC to perform the jobs as the plaintiff had described them, so the outcome would appear to have been the same no matter which job titles were used.

### 1. Performance of Past Relevant Work

Past relevant work is work that a claimant has done within the past 15 years, was substantial gainful activity, and lasted long enough for the claimant to learn to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Thus, the inquiry into whether employment is "relevant" has three components: (1) whether the work was substantial gainful activity, (2) whether it was for a sufficient duration, and (3) whether it was recent (generally deemed to be work performed within the 15 years prior to adjudication of the benefit claim). *See* SSR 82-62, 1982 WL 31386.

The plaintiff argues that she did not hold the positions of cashier supervisor and human resource clerk long enough to qualify as "relevant." As evidence, she points to the Dictionary of Occupational Titles (DOT), which assigns each job title a "specific vocational preparation" score (SVP). A job's SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, app. C, 1991 WL 688702 (4th Ed. Rev. 1991). Human resources clerk and cashier supervisor both have an SVP of 7, meaning it would take the average worker two to four years to learn either job. *See id.* Since the plaintiff's tenures as a human resource clerk (about three years) and a cashier supervisor (less than two years) were both less than four years, the plaintiff argues that she did not hold either job long enough to qualify as PRW for the purposes of a step four analysis.

This argument fails for several reasons. First, four years represents the upper, not lower, bound of the expected learning curve for a job with an SVP of 7, so the three years that the plaintiff spent as a human resources clerk would be within the range of experience contemplated by the DOT. Second, although the plaintiff did not spend a full two years as a cashier supervisor (the low end of the DOT estimate for the position), on-the-job training is not the only experience relevant to meeting the SVP for a given job title. As the DOT appendix explains, the relevant training may

9

be acquired in "a school, work, military, institutional, or vocational environment." DOT, app. C, 1991 WL 688702 (4th Ed. Rev. 1991). Hence, Judge Cohn was justified in reasoning that, "while the DOT describes a job with an SVP of 7 as typically requiring over 2 years and up to and including 4 years, full performance of such work does not necessarily require holding a specific position for that period of time," (*see* Doc. 18 at 16). Third, and most importantly, while the SVP estimate provides some guidance as to whether a claimant can reasonably be expected to have learned to do a job, it is not a per se rule for determining whether the duration element has been satisfied. The SVP provides a guide for how long it takes the "typical" worker to learn the job, but the relevant question is whether the *claimant* held the job long enough to learn it. *See* 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1) ("Past relevant work is work that . . . lasted long enough for *you* to learn to do it.") (emphasis added). Here, the plaintiff held the casino cashier job from late 2005 to March 2007 and progressed from managing the "cage" to supervising "the main bank, the vault, the cage, and the Players Club." (Doc. 10 at 77–78). Thus, the available evidence suggests that she did hold the job long enough to learn and perform it successfully.

Finally, the plaintiff does not dispute the ALJ's finding that the plaintiff's work as a medical clerk *did* qualify as PRW, and substantial evidence supported the ALJ's finding that the position of medical clerk was within the plaintiff's RFC. Therefore, even if the ALJ erred by considering the plaintiff's work for the casino and the bus line to be PRW, that error would not have changed the outcome because the plaintiff's ability to work as a medical clerk precluded a finding of disability.

### 2. *Winfrey* Test

The plaintiff contends that the ALJ erred in finding the plaintiff capable of performing her past relevant work as a medical clerk, arguing that the ALJ failed to perform the three-phase

10

analysis called for in SSR 82-62 and *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). In *Winfrey*, the Tenth Circuit described the required analysis as follows:

> Step four of the sequential analysis . . . is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), *see* SSR 86–8, Soc. Sec. Rep. Serv., Rulings 1983–1991, 423, 427 (West 1992), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *See* SSR 82–62, Soc. Sec. Rep. Serv., Rulings 1975–1982, 809; *Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 361 (10th Cir. 1993). At each of these phases, the ALJ must make specific findings.

*Winfrey*, 92 F.3d at 1023. Here, the ALJ did not articulate specific findings at phase-two—i.e., findings regarding the physical and mental demands of the plaintiff's PRW as a medical clerk.

The plaintiff's argument on this point amounts to little more than hair splitting. As Judge Cohn explains, the ALJ questioned the VEs at length regarding the demands of the plaintiff's jobs, summarized their testimony in her findings, and explicitly adopted their opinions. (*See* Doc. 18 at 17–21). This was sufficient for the purposes of satisfying the three-phase *Winfrey* test. It is not necessary for an ALJ to use the phrase "I find" at each phase of the analysis if it is clear from the ALJ's citation of VE testimony what her findings are. *See Doyal v. Barnhart*, 331 F.3d 758, 760–61 (10th Cir. 2003).

### III. CONCLUSION

For the foregoing reasons, the plaintiff's Objection (Doc. 19), is **overruled**, the Court **accepts** Judge Cohn's R&R (Doc. 18), and the Commissioner's decision finding plaintiff not disabled is **affirmed**. A separate judgment will follow this opinion and order.

SO ORDERED this 25th day of August, 2020.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT